**Douglas F. PIERCE, Claimant–Appellant,**

v.

**Anthony J. PRINCIPI, Secretary of Veterans Affairs, Respondent–Appellee.**

No. 00–7060.

United States Court of Appeals, Federal Circuit.

Decided Feb. 14, 2001.

**1350**

Kenneth M. Carpenter, Carpenter, Chartered, of Topeka, Kansas, argued for claimant-appellant.

Mark L. Josephs, Trial Attorney, Commercial Litigation Branch, Civil Division, Department of Justice, of Washington, DC, argued for respondent-appellee. With him on the brief were David M. Cohen, Director; and Todd M. Hughes, Assistant Director. Of counsel on the brief were Richard J. Hipolit, Deputy Assistant General Counsel; and Martie S. Adelman, Attorney, Department of Veterans Affairs, of Washington, DC.

Before LOURIE, SCHALL, and BRYSON, Circuit Judges.

SCHALL, Circuit Judge.

Douglas F. Pierce appeals the September 21, 1999 decision of the United States Court of Appeals for Veterans Claims that affirmed a 1998 decision of the Board of Veterans' Appeals ("Board"). *Pierce v. West*, No. 98–764, 1999 WL 757071 (Vet. App. Sep. 21, 1999) ("*Pierce* "). The Board concluded that there was no clear and unmistakable error ("CUE") in decisions issued by the Department of Veterans Affairs Regional Office ("RO") in 1945, 1946, 1948, and 1949. *In re Pierce*, No. 96–10 226 (Mar. 27, 1998) ("1998 Board Decision"). The Court of Appeals for Veterans Claims determined that the evidence of record at the time the RO decisions were rendered supported the decisions and that the RO had complied with applicable statutes and regulations in rendering the decisions. *Pierce*, slip op. at 5–6. The court therefore affirmed the Board decision that there was no CUE in the RO decisions. *Id.* at 7.

Mr. Pierce raises several issues on appeal. With regard to the RO decision issued in 1945 (the "1945 RO Decision"), he argues that the court should have considered evidence that was not before the RO when it determined whether the decision contained CUE. He also argues that the court's application of a presumption of regularity to the RO's actions violated 38 U.S.C. § 5107(b). Mr. Pierce argues further that the court abused its discretion by failing to properly exercise its jurisdiction over the Board decision upholding the 1945 RO Decision. With regard to the RO decision issued in 1948 (the "1948 RO Decision"), Mr. Pierce argues that the court misinterpreted Paragraph 13 of the applicable version of the Schedule for Rating Disabilities when it determined that the decision complied with that paragraph. Mr. Pierce does not challenge the court's decision insofar as it relates to the RO decisions issued in 1946 and 1949.

We discern no error in the court's affirmance of the Board decision upholding the 1945 RO Decision and, therefore, affirm that portion of the court's decision. Because we lack jurisdiction over Mr. Pierce's appeal of the court's decision with respect to the 1948 RO Decision, we dismiss that portion of the appeal. We therefore affirm-in-part and dismiss-in-part.

## BACKGROUND

Mr. Pierce served on active duty in the United States Marine Corps from December of 1942 until October 6, 1945. In October of 1944, he suffered a gunshot wound to the head. Upon separation, he was found physically qualified for discharge.

In 1945, Mr. Pierce submitted a claim for disability benefits for residual effects of the gunshot wound. In the 1945 RO Decision, the RO awarded Mr. Pierce service-connection for residuals of the wound at a 50% disability rating. In 1946, Mr. Pierce was hospitalized and underwent surgery to treat symptoms associated with the gun-

shot wound. In a decision issued in 1946, the RO assigned Mr. Pierce a 40% disability rating for residuals of the wound and a 10% disability rating for the loss of part of his skull. In 1947, Mr. Pierce underwent several physical and psychiatric examinations. In the 1948 RO Decision, which was issued after these examinations, the RO assigned Mr. Pierce a 30% disability rating for residuals of the gunshot wound and a 10% disability rating for the loss of part of his skull. Thereafter, Mr. Pierce underwent further physical and psychiatric examinations. In a decision issued in 1949, after these further examinations, the RO maintained the same ratings that had been assigned in the 1948 RO Decision.

In 1991, Mr. Pierce filed a claim for retroactive increased benefits, asserting that the 1945, 1946, 1948, and 1949 RO Decisions contained CUE. When the RO denied the claim, Mr. Pierce appealed the denial to the Board. The Board determined that the decisions did not contain CUE, and affirmed the RO decision denying the CUE claim. 1998 Board Decision, slip op. at 20. Mr. Pierce appealed the Board decision to the Court of Appeals for Veterans Claims, which affirmed the Board's determination as to all four of the challenged RO decisions.

### DISCUSSION

#### I.

Our jurisdiction with respect to a decision of the Court of Appeals for Veterans Claims is limited by statute. We can review the validity of any statute or regulation, or any interpretation thereof, upon which the court relied in making its decision. 38 U.S .C. § 7292(a) (Supp. IV 1998). However, we do not have jurisdiction to review a factual determination or an application of a law or regulation to the facts of a case unless a constitutional issue is presented. 38 U.S.C. § 7292(d)(2) (1994). The standard of review that we apply to the court's decisions also is defined by statute. We must set aside any

interpretation of a law or regulation that we find to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. 38 U.S.C. § 7292(d)(1) (Supp. IV 1998).

As noted above, Mr. Pierce raises four issues on appeal. With respect to the 1945 RO Decision, he argues that the Court of Appeals for Veterans Claims misinterpreted 38 U.S.C. § 5109A(a) and 38 C.F.R. § 3.105(a) when it determined that, in considering whether the decision contained CUE, it could not consider evidence that was not of record when the RO decision was rendered. He also argues that the court's application of a presumption of regularity to the actions behind the 1945 RO Decision was contrary to 38 U.S.C. § 5107(b). Finally, Mr. Pierce argues that the court abused its discretion by failing to comply with its statutory obligation to determine whether the Board decision upholding the 1945 RO Decision was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. With respect to the 1948 RO Decision, Mr. Pierce argues that the court misinterpreted Paragraph 13 of the 1945 version of the Schedule for Rating Disabilities when it determined that the 1948 Decision complied with that paragraph. We address each of these issues in turn.

#### II.

##### 38 U.S.C. § 5109A(a) and 38 C.F.R. § 3.105(a)

The 1945 RO decision awarded Mr. Pierce a temporary disability rating of 50%. Before the Court of Appeals for Veterans Claims, Mr. Pierce argued that this decision contained CUE because he should have been awarded a 100% disability rating. Specifically, Mr. Pierce argued that, in 1945, he was going to be engaged in a rehabilitative activity that prevented the pursuit of gainful occupation, thus bringing him under the scope of the guidelines for the award of a temporary disability rating of 100%. The court refused to

consider evidence of Mr. Pierce's rehabilitation program because it was not in the record when the 1945 RO decision was rendered. *Pierce,* slip op. at 5. The court citied *Russell v. Principi,* 3 Vet.App. 310 (1992) (en banc), for the proposition that CUE claims must be based on evidence that was of record when the challenged decision was made. *Pierce,* slip op. at 3.

Mr. Pierce argues that the court misinterpreted 38 U.S.C. § 5109A(a) and 38 C.F.R. § 3.105(a), and that these provisions do not limit the type of evidence that can be considered when a RO decision is being evaluated for CUE. We have jurisdiction over this issue because it involves a challenge to the court's interpretation of a statute and regulation that the court relied upon in making its decision. *See* 38 U.S.C. § 7292(a); *Pierce,* slip op. at 3–4.

Section 5109A(a) provides, "A decision by the Secretary under this chapter is subject to revision on the grounds of clear and unmistakable error. If evidence establishes the error, the prior decision shall be reversed or revised." 38 U.S.C. § 5109A (Supp. IV 1998). Mr. Pierce argues that this language does not in any way limit the evidence that can be considered to evidence that was before the RO when the decision was rendered. Therefore, he contends, the term "evidence" should be given its plain meaning, which is "any species of proof," and which includes evidence that was not of record at the time of the challenged decision.

Mr. Pierce cites the legislative history of § 5109A in support of his interpretation of the statute. He argues that Congress stated that § 5109A was intended to codify the existing regulation, 38 C.F.R. § 3.105(a), which also lacks any language limiting the evidence that can be considered. Mr. Pierce acknowledges that the legislative history makes reference to *Russell,* where the Court of Appeals for Veterans Claims (at the time named the "Court of Veterans Appeals") held that CUE claims must be based on evidence that was of record when the decision at issue was

rendered. He asserts, however, that the legislative history does not discuss or adopt this aspect of *Russell.* Mr. Pierce cites the statements of Representative Evans in the floor debate of the legislation as indicating that there were two purposes behind § 5109A: (1) to permit the correction of undebatable errors and (2) to permit the correction of errors that resulted from the RO's ignoring or wrongfully evaluating the evidence before him. Mr. Pierce argues that any evidence, including evidence that was not of record when the decision was made, can be used to establish the undebatable type of errors contemplated by Representative Evans.

Mr. Pierce also cites the history of 38 C.F.R. § 3.105(a) in support of his position. The original regulation expressly limited the evidence that could be considered to evidence that was in the file "at the time the prior decision was rendered." Veterans' Bureau Reg. 187 § 7155 (1928). Mr. Pierce argues that because this language does not appear in the current version of the regulation, the current regulation should not be interpreted as limiting the type of evidence that can be considered. Mr. Pierce also argues that, because § 5109A was intended to codify the current regulation, not the original one, it also must not be interpreted as placing any limits on the evidence that can be considered.

■■■ Our goal when interpreting a statute is to give effect to the intent of Congress. *NLRB v. Lion Oil Co.,* 352 U.S. 282, 297, 77 S.Ct. 330, 1 L.Ed.2d 331 (1957); *Assoc. Elec. Coop., Inc. v. United States,* 226 F.3d 1322, 1326 (Fed.Cir.2000). To discern Congress' intent, we look primarily to the language of the statute at issue. *Toibb v. Radloff,* 501 U.S. 157, 162, 111 S.Ct. 2197, 115 L.Ed.2d 145 (1991). However, we also consider "the design of the statute as a whole and … its object and policy." *Crandon v. United States,* 494 U.S. 152, 158, 110 S.Ct. 997, 108 L.Ed.2d 132 (1990). Following this approach, we conclude that the interpretation

of § 5109A(a) adopted by the Court of Appeals for Veterans Claims gives effect to the congressional intent behind the statute; we therefore affirm its interpretation of the statute.

■ Although the language of § 5109A does not expressly limit the evidence that can be considered in a CUE challenge to evidence that was of record at the time the challenged decision was made, the legislative history of the statute, the purpose of the statute, and the overall statutory scheme for reviewing veterans' benefits decisions all indicate that Congress intended the evidence to be so limited.

The legislative history of § 5109A expressly sets forth Congress' intent "to codify existing regulations which make decisions made by the Secretary at a regional office subject to revision on the grounds of clear and unmistakable error by the Regional Office." H .R. Rep. No. 105–52, at 1–2 (1997); see also S.Rep. No. 105–157, at 4 (1997). The legislative history also reveals Congress' awareness and approval of the decision in *Russell*. Although the House and Senate reports do not expressly discuss *Russell's* holding with respect to the evidence that can be considered when evaluating a CUE claim, they do discuss *Russell* as setting forth the current state of the law which was to be codified by § 5109A. H .R. Rep. No. 105–52, at 2; S.Rep. No. 105–157, at 3. As set forth above, that law included the requirement that determinations of CUE must be based on "the record and the law that existed at the time of the prior ... decision." *Russell*, 3 Vet.App. at 314.

The statements made by Representative Evans do not suggest that Congress intended CUE claims to be based on evidence that was not of record when the challenged decision was made. First, we are mindful that "the remarks of a single legislator, even the sponsor, are not controlling in analyzing the legislative history." *Chrysler Corp. v. Brown*, 441 U.S. 281, 311, 99 S.Ct. 1705, 60 L.Ed.2d 208 (1979). Instead, such statements "must be considered with the Reports of both Houses and the statements of other Congressmen." *Id.* Moreover, although Representative Evans appears to describe two types of errors that can be corrected under § 5109A, the examples provided in his testimony reveal that both types must be established from the evidence that was of record at the time the challenged decision was made. *See* 143 Cong. Rec. 1566, 1567–68 (daily ed. April 16, 1997) (statement of Rep. Evans). Representative Evans also stated that the standard for CUE claims is similar to the standard contained in the Social Security regulations "for revision of a claim ... due to error that appears on the face of the evidence considered when the determination ... was made." *Id.* at 1568. This statement demonstrates that Representative Evans contemplated that CUE claims would be based on evidence that was in existence at the time of the challenged decision.

Interpreting "evidence" in § 5109A as limited to evidence that was of record when the challenged decision was made fits well with the purpose of providing for CUE review. As set forth in the legislative history, the purpose behind § 5109A is to provide for the correction of obvious, outcome-determinative errors in an RO decision. *See* S.Rep. No. 105–157, at 3. If additional evidence is needed to discern an error in the prior decision, the decision itself was not made in error so as to contain CUE.

This interpretation also fits well with 38 U.S.C. § 5108, which provides for the reopening of a claim based on new and material evidence. Because § 5108 governs challenges to RO decisions based on new evidence, it is logical that the evidence that can be relied upon in a challenge brought under § 5109A would be limited to evidence that was of record at the time the decision was made. Where new evidence is needed to establish that a decision was wrong, § 5108, not § 5109A, provides for review of the decision in view of the new evidence.

The pertinent language of 38 C.F.R. § 3.105(a) ("Rule 105(a)") largely mirrors that of § 5109A: "*Error:* Previous determinations which are final and binding ... will be accepted as correct in the absence of clear and unmistakable error. Where evidence establishes such error, the prior decision will be reversed or amended." 38 C.F.R. § 3.105(a). Having construed the term "evidence" in § 5109A as being limited to evidence that was of record at the time the challenged decision was made, we cannot give the term "evidence" in Rule 105(a) a broader meaning. *See* 38 U.S.C. § 501(a) (1994) (authorizing the Secretary of Veterans Affairs to "prescribe ... regulations which ... are consistent with [the] laws [administered by the Department of Veterans Affairs]"). Contrary to Mr. Pierce's arguments, this construction does not conflict with the history of Rule 105(a).

Mr. Pierce relies on the absence of limiting language in the current version of the regulation to support his broad construction of the term "evidence." However, the explanation that was promulgated when the current language was adopted stated that the language was a "restatement" of prior regulations, *Veterans Admin. Regulations Transmittal Sheet No. 191*, at ii (May 29, 1959), which, as noted above, did limit the evidence to that which was of record at the time of the challenged decision. In view of this explanation, we cannot assume that the term "evidence," as used in Rule 105(a), is intended to have a broader meaning than it did in the prior version of the regulation.

Interpreting "evidence" in Rule 105(a) as limited to evidence that was of record when the challenged decision was made is consistent with a related regulation, 38 C.F.R. § 3.104(a) ("Rule 104(a)"). Rule 104(a) relates to the finality of decisions, and states that decisions "shall be final and binding ... as to conclusions based on the evidence on file at the time the [Department of Veterans Affairs] issues written notification [of the decision.]" 38 C.F.R. § 3.104(a). Rule 105(a) sets forth excep-

tions to this rule of finality. *Id.;* 38 C.F.R. § 3.105(a). Because Rule 105(a) is a mechanism for obtaining review of a "final" decision, and because a decision is "final" only with respect to "conclusions based on the evidence on file at the time" the decision was made, the evidence that can be considered during a review pursuant to Rule 105(a) should be limited to evidence that was on file at the time the prior decision was made. If the challenge is based on new evidence, the challenged decision is not "final" with respect to that evidence within the meaning of Rule 104(a).

We also note that the regulation which provides for CUE challenges to Board decisions requires such challenges to "be based on the record and the law that existed when [the challenged] decision was made." 38 C.F.R. § 20.1403(b)(1). In *Disabled American Veterans v. Gober,* 234 F.3d 682, 697 (Fed.Cir.2000), we upheld this regulation as a reasonable exercise of the agency's authority to fill a gap in 38 U.S.C. § 7111—the absence of an explanation of the meaning of the term "evidence" in that statute. Interpreting Rule 105(a) in a manner that is consistent with the corresponding regulation for CUE challenges to Board decisions harmonizes the mechanisms for reviewing veteran's benefits decisions, and is particularly appropriate where we have determined that § 7111, which authorizes CUE challenges to Board decisions, is identical in relevant part to § 5109A. *Id.* at 696.

We therefore affirm the court's interpretation of the term "evidence" in § 5109A(a) and Rule 105(a) as being limited to evidence that was of record at the time the challenged RO decision was made.

### III.

### The Presumption of Regularity

In his appeal to the Court of Appeals for Veterans Claims, Mr. Pierce argued that the 1945 RO Decision was based on CUE because the RO had misapplied Extension

No. 6 of the Schedule for Rating Disabilities ("Extension 6") in effect at the time. Specifically, Mr. Pierce argued that there was no evidence that his partial employment was "feasible and advised," as Extension 6 required for a 50% disability rating. The court responded to this argument by noting that, at the time the 1945 RO Decision was issued, there was no requirement that the RO provide a comprehensive statement of the reasons and bases for its decision, as required under current law. *Pierce*, slip op. at 5. The court then proceeded to apply "a presumption of regularity" to the 1945 RO Decision. *Id.* Doing so, it concluded that "the requisite finding [that partial employment was feasible and advised] is implicit and not inconsistent with the evidence then of record." *Id.* The court determined that Mr. Pierce had failed to rebut the presumption of regularity and therefore affirmed the Board decision upholding the 1945 RO Decision. *Id.* at 6.

Mr. Pierce argues that the Court of Appeals for Veterans Claims' application of the presumption of regularity in this case was contrary to the express language of 38 U.S.C. § 5107(b), which provides that "[w]hen there is an approximate balance of positive and negative evidence regarding any issue material to the determination of a matter, the Secretary shall give the benefit of the doubt to the claimant." Veterans Claims Assistance Act, Pub.L. No. 106–475, § 4, 114 Stat. 2096 (2000) (revising the language of 38 U.S.C. § 5107(b)). Mr. Pierce contends that the statute required the court to consider whether there was an approximate balance of evidence on all issues that were material to his claim. He argues that, under § 5107(b), a preponderance of the evidence is required before an issue can be resolved against the veteran. Therefore, Mr. Pierce argues, the court's use of a presumption to resolve the "feasible and advised" issue against him violated § 5107(b). In addition, although such language does not appear in the court's decision, Mr. Pierce argues that the court's requirement for "clear" evidence to

overcome the presumption also violated § 5107(b).

We have jurisdiction over this issue because it is founded on a challenge to the court's interpretation of § 5107(b). That is, to resolve this issue, we must determine whether the Court of Appeals for Veterans Claims' implicit conclusion that its application of the presumption of administrative regularity is consistent with the requirements of § 5107(b) reflects a correct interpretation of that statute.

■ Final RO decisions are entitled to a presumption of validity. *Berger v. Brown*, 10 Vet.App. 166, 169 (1997). The party bringing a CUE challenge to a final RO decision bears the burden of proving that the decision was based on a clear and unmistakable error. *Id.* This burden is not satisfied by the mere assertion that the decision contained CUE; instead, the party must describe the alleged error "with some degree of specificity" and must provide persuasive reasons "as to why the result would have been manifestly different but for the alleged error." *Fugo v. Brown*, 6 Vet.App. 40, 44 (1993).

■ Here, Mr. Pierce asserted that there was CUE in the 1945 RO Decision because the RO had not made a finding that the "feasible and advised" requirement of Extension 6 was satisfied. The Court of Appeals for Veterans Claims rejected this argument, noting that the RO was not required to set forth the reasons and bases for its decision, i.e., the RO was not required to include in its decision a statement of the findings that supported the decision. *Pierce*, slip op. at 5. The court referred to the presumption of regularity to explain why, in the absence of evidence to the contrary, it would assume that the RO had made the required finding. *Id.* The court determined, moreover, that such a finding was consistent with the evidence of record at the time the decision was made. *Id.*

In this context, the Court of Appeals for Veterans Claims' reliance on the presumption of administrative regularity did not conflict with § 5107(b). The only "evidence" on the issue of whether the RO considered the "feasible and advised" requirement of Extension 6 is the RO decision awarding Mr. Pierce a 50% disability. In view of (i) the presumption of validity that attaches to final RO decisions, (ii) the fact that, in 1945, an RO was not required to set forth its findings of fact in its decision, and (iii) the court's determination that the requisite finding on the "feasible and advised" requirement was consistent with the evidence of record, the court correctly presumed that the RO made the required finding. Because Mr. Pierce offered no evidence to the contrary, there was no "approximate balance of the evidence" that would have required the court to decide this issue in favor of Mr. Pierce. Instead, the preponderance of the evidence, indeed the only evidence, indicated that the required finding was made.

The level of proof the Court of Appeals for Veterans Claims required of Mr. Pierce in order to overcome the presumption of regularity is not clear from the court's decision. Because Mr. Pierce offered no proof on this issue, the court did not have to determine whether his proof was sufficient to overcome the presumption. However, even if the court required "clear evidence" to rebut the presumption, we would not find a conflict with § 5107(b) because § 5109A requires evidence of "clear" error to establish a CUE claim.

### IV.

#### 38   U.S.C. § 7261(a)

Mr. Pierce argues that the Court of Appeals for Veterans Claims abused its discretion by failing to comply with its statutory obligation to determine whether the Board decision upholding the 1945 RO Decision was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law, as required by 38 U.S.C. § 7261(a). Specifically, Mr. Pierce contends that the court's disposition of his argument regarding the application of Extension 6 did not comply with the statute.

The relevant portion of § 7261(a) provides that the court "shall ... hold unlawful and set aside decisions ... found to be ... arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 38 U.S.C. § 7261(a) (Supp. IV 1998). Mr. Pierce argues that the court failed to comply with this statute when it failed to provide any analysis or make any findings on the issue of whether the Board's determination that the 1945 RO Decision properly applied Extension 6 was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law. Mr. Pierce also criticizes the court for affirming the Board on this issue on grounds not relied upon by the Board. Specifically, Mr. Pierce challenges the court's reliance on the fact that, in its 1945 decision, the RO was not required to set forth the reasons and basis for the decision and the court's reliance on the presumption of administrative regularity because the 1998 Board Decision did not uphold the 1945 RO Decision on either of those grounds.

We have jurisdiction over this issue because it is based upon the assertion that the Court of Appeals for Veterans Claims court did not comply with the requirements of its jurisdictional statute, § 7261. *See Maggitt v. West*, 202 F.3d 1370, 1379 (Fed.Cir.2000) (noting that "we may subject ... issues [of the court's jurisdiction] to appropriate appellate review").

■ We find no merit to this challenge to the court's decision. The court plainly determined that the Board decision upholding the 1945 RO Decision "was not arbitrary or capricious, and must be affirmed." *Pierce,* slip op. at 6. The court also determined that Mr. Pierce "ha[d] not demonstrated that the Board committed either legal or factual error that would warrant reversal or remand," and that the Board decision "was in accordance with

the law and thus was neither arbitrary nor capricious nor an abuse of discretion." *Id.* at 7. The fact that the court's decision includes reasoning that is not found in the Board decision arises from the fact that Mr. Pierce presented to the court an argument that he had not made before the Board, namely, his argument that the 1945 RO Decision contained CUE because there was no evidence that Mr. Pierce's partial employment was "feasible and advised," as Extension 6 required for a 50% disability rating. Because the Court of Appeals for Veterans Claims has the authority to hear arguments presented to it in the first instance, *Maggitt*, 202 F.3d at 1377, we will not find error in the court's answering of such arguments in its decisions.

Because we have rejected each of Mr. Pierce's challenges to the Court of Appeals for Veterans Claims decision affirming the 1998 Board Decision with respect to the absence of CUE in the 1945 RO Decision, we affirm the court's decision on that issue.

V.

The 1948 RO Decision

█ Mr. Pierce argues that the Court of Appeals for Veterans Claims misinterpreted Paragraph 13 of the 1945 Schedule for Rating Disabilities ("Paragraph 13") when it affirmed the Board decision that the 1948 RO Decision complied with this paragraph. That paragraph provides:

> When any change in evaluation is to be made, the rating agency should assure itself that there has been an actual change in the condition, for better or worse, and not merely a difference in thoroughness of the examination or in use of descriptive terms. This will not, of course, preclude the correction of erroneous ratings, nor will it preclude giving the veteran the benefit of reasonable doubt as to increase in severity.

Mr. Pierce argues that the court should have interpreted Paragraph 13 as requiring the RO to determine whether there had been an actual change in his condition before changing his disability rating. Mr. Pierce argues that the court's error is evident because the court did not consider Mr. Pierce's symptoms, but only considered whether the RO had applied the applicable diagnostic code correctly.

We hold that we lack jurisdiction with respect to this issue because it represents a challenge to the court's application of law to facts. Page 6 of the court's decision sets forth its interpretation of Paragraph 13: "That paragraph requires that, prior to reducing a rating, the adjudicator must determine whether there has been an actual change for the better in the benefits recipient's condition." *Pierce*, slip op. at 6. Because this interpretation is the same interpretation advocated by Mr. Pierce, Mr. Pierce's complaint about the court's decision on this issue amounts to nothing more than a challenge to the court's application of the law to the facts of the case. Because we lack jurisdiction over such a challenge, *see* § 7292(d)(2)(B), we dismiss this portion of Mr. Pierce's appeal.

*CONCLUSION*

For the foregoing reasons, we affirm the decision of the Court of Appeals of Veterans Claims that affirmed the Board decision upholding the 1945 RO Decision. We dismiss for lack of jurisdiction that portion of Mr. Pierce's appeal that represents a challenge to the court's decision regarding the 1948 RO Decision.

*AFFIRMED–IN–PART* and *DIS-MISSED IN PART.*

COSTS

Each party shall bear its own costs.